CEDERLOFF v. WHITED.

No. 6913.   Decided June 13, 1946.   (169 P. 2d 777.)

See 42 C. J., Motor Vehicles, sec. 757; 5 Am. Jur. 678. Automobile crossing street at a point other than a street intersection, note, 57 A. L. R. 1100. Motorist's duty at private driveway, note, 24 A. L. R. 946; see, also, 5 Am. Jur. 670.

*Edwin D. Hatch,* of Salt Lake City, for appellant.

*Foote & Dawson, Jesse R. S. Budge,* and *Edwin B. Cannon,* all of Salt Lake City, for respondent.

WADE, Justice.

Plaintiff brings this action to recover damages for injuries which she sustained in an automobile collision between her car which was being driven by her son, and defendant's car which defendant was driving. The jury returned a verdict in favor of defendant, no cause of action, and plaintiff appeals.

Near midnight between June 15 and 16, 1944, plaintiff and her son and his wife were riding in a northerly direction on State Street in Salt Lake City, on the east side of the street in the traffic lane nearest the center. At the same time the defendant with a lady friend was riding in his car in a southerly direction. As these cars were approaching a point about 200 feet north of 9th South where the driveway into the Condas Apartments enters the east side of State Street, in attempting to turn into that driveway, the defendant turned the right front corner of his car directly into the course of plaintiff's car and the two cars collided. The point of impact was a few feet east of

the center line of the street and about in the middle of the traffic lane in which plaintiff's car was traveling. All of the front of plaintiff's car was smashed and the right front fender and the right side of the radiator of defendant's car were smashed. This indicates that the front part of defendant's car was all that had gotten beyond the center line of the street. After the impact plaintiff's car veered to the east and stopped with the front against the east curb of the street about 30 feet from the point of impact. The defendant's car which was going in a southeasterly direction at the point of impact veered sharply to the north and came to rest near the center of the street facing north about 48 feet from the point of impact. Plaintiff's car was damaged and she received more or less serious personal injuries. If she was entitled to recover there is no question but that she sustained damages.

The undisputed testimony shows that plaintiff's car was traveling from 25 to 30 miles per hour immediately prior to the accident, with lighted headlights which complied with the legal requirements; that the semaphore light at the intersection of 9th South and State Street was green and her car passed through without stopping; that the collision occurred about 200 feet north of that intersection; that immediately prior thereto the driver of plaintiff's car was observing the traffic generally to the north but he did not notice the defendant's car was turning until it was about a car length in front of him, that he then applied his brakes but was unable to stop in time to avoid a collision. A police officer testified that after the collision the pavement showed time marks 21 feet in length where plaintiff's car had traveled immediately prior to the collision, probably made part by the front and part by the rear wheels.

The testimony also showed without dispute that when defendant passed through the intersection of 8th South and State Street he was traveling from 10 to 15 miles per hour, in the center or second lane of traffic west from the center of the street, and that about halfway between that intersection and the Condas Apartment driveway he put his

hand out of his car window and signaled a left hand turn and turned over into the first lane of traffic next to the center line in the street, that he continued with his hand out of the window to signal a left hand turn until he neared the Condas Apartment driveway and commenced making the turn, that as he did so he slowed his car down to about 5 miles per hour and at the time of the collision he was almost stopped. That before he entered the northbound traffic lane he looked to the south for northbound cars but saw no car approaching from the south and that he did not see plaintiff's car at all before the collision. The police officer testified that there were tire marks 12 feet long on the pavement where defendant's car had traveled immediately preceding the collision. Also probably made part by the front and part by the back wheels.

Plaintiff strenuously contends that the court should have directed the jury that as a matter of law the defendant's negligence was the sole proximate cause of the collision and resulting damage to the plaintiff and should have left to them the determination of the amount of such damages.

Section 57-7-133, U. C. A. 1943, provides:

"(a) No person shall turn a vehicle from a direct course upon a highway unless and until such movement can be made with reasonable safety  *  *  *."

Defendant turned his car from a direct course in the highway into the lane of traffic intended for vehicles traveling the opposite direction at a time when plaintiff's car was approaching in such close proximity that the collision occurred as soon as the front end of defendant's car had reached a few feet into plaintiff's lane of traffic. Had plaintiff's car run into the rear end of defendant's car after the front end thereof had entirely crossed plaintiff's course of travel, there might have been some question whether the turn could be made with reasonable safety, but under the facts in this case it is clear that as a matter of law the turn could not be made with reasonable safety, and that defendant was guilty of negligence. The defendant's testimony

that he looked and did not see any car coming does not help his situation, because if he had paid attention to what was there to be seen he would have seen plaintiff's car coming, as it was approaching in the immediate vicinity, and there is no claim that it did not have proper lights. It is equally clear that such negligence of the defendant was at least one of the proximate causes of the accident. The accident was the immediate and direct result of this negligence, and without such negligence it would not have occurred.

But our question is: Was defendant's negligence the sole proximate cause of the accident? Or was the evidence such that the jury could reasonably find therefrom that plaintiff was guilty of negligence which proximately contributed in causing the accident? The jury could have reasonably found, either: One, that the defendant drove slowly south down State Street, and after passing the intersection at 8th South, he turned from the second into the first southbound traffic lane or the lane on the west side of the street nearest to the center, while signaling with his hand a left hand turn, and then as he approached the entrance into the Condas Apartments he turned very slowly into the east side or northbound traffic lane directly in front of plaintiff's car where the accident occurred; or, two, that the defendant, without slowing down, suddenly turned into the northbound traffic lane directly into the course of plaintiff's car approaching from the south, whereupon defendant applied his brakes after it was too late to avoid a collision. This second course is supported by the fact that rubber marks were found on the pavement for a distance of 12 feet on the course where defendant's car had traveled immediately preceding the impact, and the testimony of plaintiff's driver that he was watching the traffic generally that was coming from the north but did not see that defendant's car was turning until it was within about a car's length directly in front of him.

If the jury found that the defendant made the turn very slowly in accordance with his testimony then his negligence

was the sole proximate cause of the collision. Had the driver of plaintiff's car observed defendant slowly making the turn in accordance with defendant's testimony, he would be justified in assuming that defendant had seen his approach and would stop, as the law required him to do before entering the northbound traffic lane, and allow plaintiff's car to pass. To drive in that manner would be an invitation to the driver of plaintiff's car to continue in his regular course, and when defendant continued to crawl into plaintiff's lane of traffic and failed to stop as the law required him to do, it would be too late to avoid the accident by the time that plaintiff's driver could discover that defendant was not going to stop. Thus as a matter of law defendant's negligence would be the sole proximate cause of the accident. And even though the plaintiff's driver failed to keep a proper lookout and for that reason did not see defendant slowly making the turn such failure would not be a proximate contributing cause of the collision because he could not, under those circumstances, be reasonably expected to have done any different than he did had he kept a proper lookout. So under that state of facts the court should have instructed as a matter of law that the defendant's negligence was the sole proximate cause of the accident.

If, on the other hand, the jury found that the defendant did not slow down to make the turn but turned suddenly into plaintiff's lane of traffic the result would still be the same. Each car was traveling in the traffic lane nearest the center of the street, and adjoining the traffic lane in which the other car was traveling. Defendant's car would move only a very short distance after it commenced to turn before it would be directly in the course of travel of plaintiff's car and even if there were street lights, plaintiff's driver could not see defendant's arm signal behind defendant's head lights. It would take time after defendant commenced to turn before plaintiff's driver, if keeping a proper lookout, would be able to realize that defendant was turning and was not merely weaving slightly from side to side,

and after that if defendant was traveling fast enough to indicate that he did not intend to stop, his car would have to travel such a short distance before he would be directly in front of plaintiff's car in the course of its travel so that plaintiff's car would not have time to stop and thereby avoid a collision. If defendant's car continued to move toward the east, plaintiff's driver would not be able to avoid a collision by swerving in that direction because defendant's car would be traveling almost directly toward the east and thus would move farther in that direction in the same length of time that plaintiff's car would, since it could only swerve or veer toward that direction. So under these circumstances plaintiff could not have avoided the accident, and defendant's negligence was as a matter of law the sole proximate cause of the collision and resulting injury and the court erred in not so instructing the jury.

There is only one other question raised on this appeal which will be involved in the retrial and which we must determine here. That is, did the court err in limiting the amount which plaintiff could recover for damages to her car, to $50, that being the amount which plaintiff paid for repairs to her car in excess of the amount paid therefor by the Insurance Company which insured her car against property damage. Defendant contends that upon the payment by the Insurance Company for the damages to the car, it was subrogated to plaintiff's claim against the defendant to that extent, and that even though defendant paid the full amount of plaintiff's claim to her that would not prevent the insurance company from bringing another action and recovering that amount again.

Defendant relies on *Johansen* v. *Cudahy Packing Co.*, 107 Utah 114, 152 P. 2d 98. That case involved the death of an employee in the course of his employment as the result of the negligence of a third person. The Workman's Compensation Insurance Carrier paid part of the award to the dependents of the deceased, and the dependents brought the action against the third party to recover damages resulting from the death of the employee. The case

was dismissed by the trial court. One of the grounds for dismissal was that the plaintiff could not maintain such action because the insurance company as a result of the payment had been subrogated to the claim of the plaintiff. We held that to the extent of the amount paid by it, the insurance company was subrogated to the claim of the plaintiff, that since plaintiff had a claim in excess of the amount paid by the insurance company she was also interested in the claim and was a proper party plaintiff and could maintain the action, on behalf of herself and as trustee for the insurance company; that there was only one cause of action which could not be divided into two suits; that some courts hold that the insurance company would be a proper party plaintiff, and some even go so far as to hold that it is a necessary party and in case it refused to join as plaintiff it must be joined as a defendant, but that the failure to join the insurance company was at most a defect in parties which defendant by its failure to raise had waived and therefore the action should proceed in the name of the plaintiff alone.

Defendant contends that it did not waive this objection because it had no notice or knowledge of the payment by the insurance company until plaintiff testified thereof during the trial. Defendant did not make the objection that there is a defect in the parties to the action and therefore plaintiff cannot maintain the action, as was done in the Johansen case, but contends that plaintiff cannot recover the full amount of damages done to her car because such recovery would not prevent the insurance company from recovering again from defendant in another action the amount which it had paid. As pointed out in the Johansen case, supra, even though the insurance company is subrogated to a part of the claim of the plaintiff, against the defendant, that does not create another cause of action and there can only be one suit to recover on that cause of action. Thus this action will bar any future action on this cause of action whether plaintiff recovers the amount paid by the insurance company or not, even though the insurance company is not made a party to this action.

There is another reason why this ruling was erroneous. The only evidence supporting defendant's contention that the insurance company was subrogated to a part of plaintiff's claim was her testimony that the insurance company had paid her repair bill except $50 thereof. ■ This does not prove a subrogation in fact, nor does it constitute a subrogation in law. And without proof of a subrogation this payment would be no defense to plaintiff's recovery of the full amount of the damages to her car. *Anderson* v. *Industrial Commission,* 108 Utah 52, 157 P. 2d 253.

Case is reversed and remanded to the District Court for a new trial on the question of plaintiff's damages in accordance with this decision. Plaintiff shall recover her costs on appeal.

LARSON, C. J., and McDONOUGH and PRATT, JJ., concur.

WOLFE, Justice.

I concur. The driver making the left hand turn in most every case has control of the situation. He knows when he is going to turn. The opposing approaching drivers must discover it. Even where an approaching driver is coming too rapidly, the left hand turn drivers must take that into consideration. All the more reason that he should not take a chance. After all, the approaching driver is in his own lane. His excess speed may have constituted negligent driving but that negligence did not contribute to the accident. Of course, if the approaching driver speeded up when he saw the other athwart his path or, having ample time to appreciate the situation if the other man did not observe it, or, observing it, failed to use the ample opportunity to avoid the accident, other principles would apply.